# Blind v. Blind, Appellant.

*Divorce—Adultery—Evidence—Sufficiency.*

A libel praying for a divorce on the ground of adultery is properly granted where the findings of the master, amply supported by the

evidence, were that the offense had been committed and had not been condoned.

Argued Nov. 20, 1918.   Appeal, No. 176, Oct. T., 1918, by respondent, from decree of C. P. No. 4, Philadelphia Co., September T., 1916, No. 226, granting divorce a. v. m. in case of George G. Blind v. May Blind.   Before PORTER, HENDERSON, HEAD, TREXLER and WILLIAMS, JJ. Affirmed.

Libel in divorce.   Before AUDENRIED, J.
The opinion of the Superior Court states the case.

*Error assigned* was decree granting the divorce.

*Peter M. MacLaren,* for appellant.

*Daniel J. Shern,* for appellee.

OPINION BY HEAD, J., April 21, 1919:
The plaintiff filed his libel praying for an absolute divorce from his wife on the charge that she had been unfaithful to her marriage vow.   It named a corespondent with whom, at times and places specified, it was alleged the respondent had indulged in criminal intercourse.   An answer was filed denying the charges made and averring that the plaintiff himself had been guilty of like misconduct with a corespondent named, but lacking in specification, as to the time or place of the commission of any illegal act.   A master was appointed and a large amount of testimony taken.   If the declaration made by Lord Stowell in Loveden v. Loveden, 2 Haggard 2, and many times since quoted in the opinions of our own courts, be still accurately descriptive of the character of proof regarded by the law as sufficient to establish the commission of adultery, it must be conceded the proof offered by the plaintiff measured up to that standard.   If credible, we are satis-

fied it supported the conclusion reached both by the master and· the learned court below.    The probative value of evidence of this character, depending as it does on the credibility of the witnesses is, of course, to be determined by the tribunal that tries and determines questions of fact.    Whilst our obligation to read for ourselves the testimony and to reach our own conclusions directly from it is a plain one, it does not follow that any good purpose would be subserved by a detailed review of the five hundred pages of printed testimony in order to point out the many reasons why we reach the same conclusion already arrived at by the learned court below and the master who took the testimony.    Whilst in such cases the report of the master does not come, either to the court below or to this court, with the sanction that would be attached to the verdict of a jury, nevertheless, it is to be remembered that he was the only person who saw and heard the witnesses and who could be properly impressed by their appearance, their intelligence or the lack of it, their seeming candor or its absence, etc.    As a consequence, it is our duty to give full and fair consideration to these things.    There were a number of points in the testimony of the respondent that would naturally lead any fair-minded tribunal to seriously hesitate in accepting her testimony as entirely satisfactory.    For instance, her explanation of the occurrence in Atlantic City on the Sunday· morning in August when her husband and her brother-in-law entered her house and found her and the corespondent asleep in the same room in ordinary night garb, can hardly be regarded as a sufficient one.    Especially is this true, when her statement that on being awakened by her husband she declared she thought the other man was her brother, becomes difficult to accept in the light of his testimony that he did not arrive in Atlantic City until some hours later, when she was already in the custody of the law because of the shooting that took place there that morning.    But we content ourselves

with the statement that to our minds the evidence was sufficiently convincing to warrant both the master and the court below in reaching the conclusions they respectively adopted.

It does not appear that the counter charge made by the respondent in her answer was pressed at the hearings and the record discloses nothing that would warrant the refusal of a decree in favor of the libellant on that ground.

We are earnestly urged, however, to say that the decree should be reversed because the learned court below should have determined that the offense charged in the libel had been condoned. The allegation that her husband had condoned her offense was first advanced by the respondent in her answer to the rule to show cause why a final decree should not be entered. This answer was sworn to by her on the twenty-fifth of February, 1918. In that answer she alleged that she had been visited by her husband after midnight on the third of May, 1917, and that after a lengthy interview he agreed to withdraw the charge of adultery made in the libel, and then and there sexual relations had been resumed between them. This allegation was stoutly denied by the libellant. In her earlier testimony before the master she had given an account of this meeting and testified that there was a lengthy discussion about the future of their young child and that she was anxious that the application for a divorce should rest on other grounds than those stated in the libel. She made no mention at that time of the alleged act of condonation. Although her testimony, taken much later when the matter was specially referred back to the master because of her answer to the rule, leads to the conclusion that she had assumed, from the character of their interview on the night of the third of May, either, that the whole proceeding would be dropped or at least the charge of adultery would be withdrawn; nevertheless, she attend-

ed a hearing on the very next day and made no mention of the all-important fact, even to her own counsel.

Among other witnesses called by the plaintiff was a woman who was employed by a detective agency, the services of which had been secured by the libellant. She spent about three weeks as a boarder in the house kept by the respondent at Atlantic City and testified to many particular incidents which would tend to support the charge preferred in the libel. The argument presented to us by the learned counsel for the appellant in commenting on this testimony appears to us to be intended to persuade the court that such testimony should be wholly rejected and regarded as of no value whatever. Our own case of Naylor v. Naylor, 59 Pa. Superior Ct. 547, is cited as if in support of this contention. The elaborate and cautious opinion of President Judge Rice in that case we think rather proves that such a contention is untenable. It is there pointed out that there are good reasons why such testimony should be received with caution and be most carefully scrutinized before it is accepted. But, it is also shown that such persons are regarded by the law as competent witnesses. If they are, their testimony cannot be wholly rejected and passed by as if it had not been delivered. Where a decree sought for would rest only on such evidence a cautious judge might well hesitate to enter it, but where there are other corroborative witnesses and circumstances reasonable consideration must be accorded to it. In this light we have read it and endeavored to give it due weight which, of course, does not mean that every fact testified to is accepted as absolute verity. Without going further, however, into unpleasant details, we think it sufficient to state that we are satisfied from the evidence that the libellant exhibited a good cause of action and that the decree entered by the court below finds a sufficient foundation in the evidence.

The assignments of error are overruled.

The appeal is dismissed at the costs of the appellant.